UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CYNTHIA I. BARNELLO and THOMAS E.
BARNELLO,

      Plaintiffs,

v.                                  Case No:   6:14-cv-1383-Orl-41TBS

BAYVIEW LOAN SERVICING, LLC,

      Defendant.

_____

## ORDER

      This matter is before the Court on Plaintiffs' Motion for Protective Order (Doc. 60).

Defendant filed a response in opposition to the motion (Doc. 65).   For the reasons that

follow, Plaintiffs' motion is due to be **GRANTED**.

### I. Background

      Plaintiffs allege that after an 11 U.S.C. § 727 discharge of their mortgage debt,

Defendant engaged in protracted collection efforts in violation of the Fair Debt Collections

Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Florida Consumer Collection Practices

Act ("FCCPA"), FLA. STAT. § 559.55, *et seq.*   Plaintiffs allege that Defendant's conduct

has caused them "severe stress, anxiety, inconvenience, frustration, annoyance, fear,

confusion and loss of sleep."   (Doc. 1, ¶ 43).   Plaintiffs seek a declaratory judgment and

"$1,000 statutory damages for each offense, actual damages, costs, attorney fees, and

for such other equitable relief as this Court deems just and appropriate."   (Id. at 20).

      Defendant filed a motion to compel Plaintiffs "to attend a psychological

examination regarding their alleged emotional distress damage claim and to provide

discovery regarding their medical records and history."   (Doc. 41 at 1).   Defendant

argued that Plaintiffs put their mental condition at issue and that good cause existed to conduct an independent psychological examination because Plaintiffs are claiming physical and emotional damages (Id. at 4-6).   Plaintiffs countered that the allegations in their complaint allege "nothing more than typical 'garden variety' damage claims," for which they seek "emotional distress damages of at least $80,000."  (Doc. 44 at 9, 12-13). While Plaintiffs intend to testify about their alleged emotional distress caused by Defendant, they amended their disclosures to remove their doctor as a witness and to remove their medical billings and records from the list of documents that may be used at trial (Id. at 3).

The Court found that Plaintiffs have put their mental condition in controversy and that Defendant had demonstrated good cause for a mental examination (Doc. 45).   In making this determination, the Court noted that Plaintiff Thomas Barnello claims that his concentration, memory, and sleep have been affected by Defendant's actions and that he is "being treated for symptoms of stress related medical problems including anxiety and insomnia due to Bayview's relentless collection activity."  (Doc. 41 at 20-23).   Mr. Barnello reports having been prescribed Xanax, which he "truly hate[s] having to take" but "simply cannot get by without."   Id.   Plaintiff Cynthia Barnello has represented that she suffers from "extreme stress."   (Id. at 20).   She has "been prescribed Atenolol to treat stress related high blood pressure" and she "put off taking this medication for as long as possible but everything related to Bayview and this case causes [her] extreme stress to the point that every contact from Bayview, and even from [her] own lawyer concerning this case, causes [her] to physically shake."   (Id. at 23).   Plaintiffs have reported being embarrassed and their being a "terrible stain on [their] marriage and family life."   (Id.). The Court found these claims sufficient to put Plaintiffs mental condition in controversy.

The Court also found that Defendant had shown good cause for a mental examination in part, because Plaintiffs are seeking more than $80,000 in damages for emotional distress.   The Court said that although Plaintiffs do not intend to offer expert testimony on the subject, they intend to testify themselves and "offer the testimony of corroborating witnesses who know them and who can testify that Plaintiffs suffered demonstrable emotional distress caused by Bayview."   (Doc. 44 at 9).   The Court felt that Defendant should have a reasonable opportunity to challenge this testimony including by expert testimony.   For these reasons, the Court ordered Plaintiffs to submit to a Rule 35 mental examination.

Following the entry of the Court's Order, Plaintiffs provided HIPPA releases for their primary care physician, Dr. Carmen Federico, D.O., who produced hundreds of pages of unredacted medical records, notes, and evaluations dating back to 2011, when Plaintiffs began treatment (Doc. 60, ¶ 5).   Plaintiffs also submitted to Rule 35 mental examinations performed by Alan J. Raphael, Ph.D. (Id., ¶ 6).   They were also deposed on December 10 and 11, 2015 (Id., ¶¶ 7-8).   During their depositions, Plaintiffs testified that they sought marriage counseling in July 2015 and grief counseling in September 2015 after the death of Mrs. Barnello's son (Docs. 60-3, 60-4).

On February 11, 2016, Defendant served a subpoena on Plaintiffs' marriage counselor, licensed clinical social worker Christina J. Tartaro-Stolp, to appear at a deposition in Syracuse, New York on February 19, 2016 (Doc. 60-5; Doc. 65 at 2).   The subpoena commands Ms. Tartaro to produce four categories of documents:

> 1. All documents and records from January 1, 2014 through the present reflecting the dates in which Thomas and Cynthia Barnello met with you regarding marriage of or marital counseling;

2. All documents and records from January 1, 2014 through the present reflecting the dates in which Thomas Barnello met with you regarding marriage of or marital counseling;

3. All documents and records from January 1, 2014 through the present reflecting the dates in which Cynthia Barnello met with you regarding marriage of or marital counseling;

4. All documents and records from January 1, 2014 through the present relating to counseling sessions, appointments, bills, records, tests, reports, notes (handwritten or typed), and evaluations that pertain to any kind of service of any kind provided by Christina J. Tartaro-Stolp, and/or her agents on or for Thomas and Cynthia Barnello, including all correspondence and telephone conversation notes to and from all sources, including but not limited to other facilities and providers, and any other such document or record in the possession, custody or control of Christina J. Tartaro-Stolp and/or her agents, or to which Ms. Tartaro-Stolp may have access relating to Thomas and Cynthia Barnello and communications received from Bayview Loan Servicing, LLC.

(Doc. 60-5 at 6).

Plaintiffs seek a protective order preventing Defendant from obtaining any discovery from Ms. Tartaro-Stolp (Doc. 60).   As grounds, they argue, based upon the Supreme Court's decision in Jaffee v. Redmond, 518 U.S. 1 (1996), that their communications with Ms. Tartaro-Stolp are privileged and thus, protected from compelled disclosure under FED. R. EVID. 501 (Doc. 60 at 11).

## II. Discussion

Federal Rule of Civil Procedure 26(c)(1)(A) authorizes the Court to issue a protective order forbidding disclosure or discovery upon a showing of "good cause, … to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"   The party seeking a protective order has the burden to demonstrate good cause and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements," supporting the need for a protective order.

United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); U & I Corp. v. Advanced Med. Design, Inc., 251 F.R.D. 667, 673 (M.D. Fla. 2008).

Assertions of privilege in federal question cases are governed by federal law.   See FED. R. EVID. 501.   In Jaffee v. Redmond, 518 U.S. 1 (1996), the Supreme Court decided that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."   Id. at 15.   This privilege extends to "confidential communications made to licensed social workers in the course of psychotherapy."   Id. "Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'"   Id. at 10.   The privilege is absolute, in that it is not subject to a balancing test, because "the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected.'"   Id. at 18.   But, like other testimonial privileges, the patient may waive the psychotherapist privilege.   Id. at 15 n.14.

Defendant seeks to discover information that is protected by the psychotherapist privilege.   The question is whether Plaintiffs have waived the privilege by putting their mental condition in controversy.   Courts have adopted three different approaches to the question of waiver in these circumstances.

> On the one end of the spectrum there is the broad approach to waiver. Under the broad approach, courts have held that a simple allegation of emotional distress in a complaint constitutes waiver.   See Sarko v. Penn-Del Directory Co., 170 F.R.D. 127 (E.D.Penn.1997); Doe v. City of Chula Vista, 196 F.R.D. 562 (S.D.Cal.1999).   Under the narrow approach, at the other end of the spectrum, courts have held that there must be an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived.   See Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D.Mass.1997); Hucko v. City of Oak Forest, 185 F.R.D. 526 (N.D. Ill.1999).

…

> There is a middle ground between the <u>Sarko</u> and <u>Vanderbilt</u> lines of cases.
> <u>See</u> 3-504 Weinstein's Federal Evidence § 504.07[8] & n. 22.4 (discussing
> "limited" broad view of waiver).   Under this approach, courts have generally
> found a waiver when the plaintiff has done more than allege "garden-
> variety" emotional distress.   Garden-variety emotional distress has been
> described by one court as "ordinary or commonplace emotional distress,"
> that which is "simple or usual."   In contrast, emotional distress that is not
> garden variety "may be complex, such as that resulting in a specific
> psychiatric disorder."   <u>Ruhlmann v. Ulster County Dep't of Soc. Servs.</u>, 194
> F.R.D. 445, 449 n. 6 (N.D.N.Y.2000)

<u>Fitzgerald v. Cassil</u>, 216 F.R.D. 632, 636-37 (N.D. Cal. 2003).

Although the Eleventh Circuit has not addressed waiver of the psychotherapist-patient privilege, "the majority of district courts considering the issue … have adopted the middle position, holding that a party does not place his or her mental condition at issue merely by alleging emotional distress and/or mental anguish."   <u>Chase v. Nova Se. Univ., Inc.</u>, No. 11-61290-CIV, 2012 WL 1936082, at *4 (S.D. Fla. May 29, 2012) (citing <u>Ortiz-Carballo v. Ellspermann</u>, No. 5:08-cv-165-Oc-10GRJ, 2009 WL 961131, at *2 (M.D. Fla. Apr.7, 2009); <u>Stevenson v. Stanley Bostitch, Inc.</u>, 201 F.R.D. 551, 553 (N.D. Ga. 2001)). <u>See also Dominguez-Silva v. Harvey</u>, No. Civ. 3:04-CV-135-JTC, 2006 WL 826091, at *1 (N.D. Ga. Mar. 23, 2006); <u>Wheeler v. City of Orlando</u>, No. 6:07-CV-1287-ORL-22DAB, 2007 WL 4247889, at *3 (M.D. Fla. Nov. 30, 2007) ("Wheeler has asserted a claim for Intentional Infliction of Emotional Distress, which puts his mental health directly into controversy; thus, waiving the psychotherapist-patient privilege.") (internal citations omitted); <u>Kelly v. Owens</u>, No. 2:05-CV-1150-MHT-TFM, 2007 WL 2580492, at *3 (M.D. Ala. Sept. 4, 2007); <u>Maday v. Pub. Libraries of Saginaw</u>, 480 F.3d 815, 818 (6th Cir. 2007); <u>Doe v. Oberweis Dairy</u>, 456 F.3d 704, 718 (7th Cir. 2006); <u>Schoffstall v. Henderson</u>, 223 F.3d 818, 823 (8th Cir. 2000).   "[D]etermining whether the plaintiff has

placed her mental condition at issue so as to waive the privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested."   <u>Stevenson</u>, 201 F.R.D. at 557.   "Indeed, most of the cases addressing waiver have been consistent with the Rule 35(a) standard by finding waiver only where something other than garden variety emotional distress has been alleged." <u>Id</u>. (collecting cases).   <u>See also Chase</u>, 2012 WL 1936082, at *4.

The reasons the Court gave for finding that Plaintiffs should submit to Rule 35(a) mental examinations lead inescapably to the conclusion that Plaintiffs have waived the psychotherapist-patient privilege with respect to any confidential communications they have had with Ms. Tartaro-Stolp.   But a finding of waiver does not end the inquiry.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."   FED. R. CIV. P. 26(b)(1).   The Court finds that the discovery Defendant seeks from Ms. Tartaro-Stolp is not proportional to the needs of this case.   In arriving at this conclusion, the Court has considered the following factors:[1]   (1) Plaintiffs will not be calling an expert witness at trial to testify to their alleged distress and mental anguish; (2) the amount of emotional damages Plaintiffs seek; (3) the issues in the case; (4) Defendant already has Plaintiffs' medical records from their primary care physician; (5) Plaintiffs have submitted to Rule 35(a) mental examinations; (6) Plaintiffs

---

[1] The Court has not undertaken to list these factors in order of priority.

have been deposed; (7) unlike the Rule 35(a) examinations, when Plaintiffs sought help from Ms. Tartaro-Stolp they expected those communications to be confidential and privileged; (8) the Court is not convinced that the records and testimony Defendant seeks can truly be limited strictly to matters concerning Defendant; (9) the discovery Defendant seeks could cause significant harm to Plaintiffs and their relationship with Ms. Tartaro-Stolp.   As the Supreme Court noted in Jaffee, "[e]ffective psychotherapy depends upon an atmosphere of confidence and trust, and therefore the mere possibility of disclosure of confidential communications may impede development of the relationship necessary for successful treatment."   Jaffee, 518 U.S. at 2.   "Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace."   Id. at 10; and (10) the Court has considered the expense involved for counsel to travel to Syracuse, New York to take Ms. Tartaro-Stolp's deposition in comparison to the issues and amount in controversy and finds that the balance tips in Plaintiffs' favor.

Now, having found the discovery sought by Defendant to be disproportional to the needs of the case, Plaintiffs' motion for a protective order is **GRANTED**.   Defendant may not have discovery from Christine J. Tartaro-Stolp.

**DONE** and **ORDERED** in Orlando, Florida on March 11, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record